IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARCH INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 21-cv-444-DWD |
| | ) |
| CATLIN INDEMNITY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

In this action, Plaintiff Arch Insurance Company brings two counts against Defendant Catlin Indemnity Company related to alleged concurrent coverage of the insured party, Southwestern Illinois College ("SWIC"). In or about 2017, Plaintiff provided a defense to SWIC in the Illinois state court lawsuit captioned *Peggy Kachadorian v. Metro-East Transit District of St. Clair County d/b/a St. Clair County Transit District*, Case No. 17-L-184 (St. Clair County, Illinois) (the "Kachadorian Lawsuit"). Plaintiff seeks a declaration that Defendant had a duty to contribute and participate in the defense and indemnity of SWIC in the Kachadorian Lawsuit (Count I) and a declaration that Defendant must reimburse Plaintiff for its proportionate share of defense and settlement costs which Plaintiff expended on behalf of SWIC in the Kachadorian Lawsuit (Count II) (*See* Doc. 1, ¶¶ 39, 45).

Now before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, motion for more definite statement

pursuant to Federal Rule of Civil Procedure 12(e) (Doc. 16).  For the reasons detailed below, the Motion will be denied.

## The Complaint

Plaintiff issued a commercial general liability insurance policy to SWIC (Policy No. NCPKG0066907) for the period of July 1, 2015 to July 1, 2016 (Doc. 1, ¶ 6).  Defendant also issued a commercial general liability insurance policy to SWIC (Policy No. CND-IL-EPP-12171-003) for the period of July 1, 2015 to July 1, 2016 (Doc. 1, ¶ 7).  Plaintiff alleges that the two policies provide concurrent coverage to SWIC during the relevant period covering the events at issue in the Kachadorian Lawsuit (Doc. 1, ¶ 8).

In the Kachadorian Lawsuit, Plaintiff Kachadorian sought recovery for damages from SWIC, who at the time was conducting business as a common carrier under the trade name "Alternative Transportation Systems" ("ATS") pursuant to a contract with Metro-East Transit District of St. Clair County d/b/a St. Clair County Transit District.  On April 12, 2016, while Kachadorian was a passenger on an ATS bus, the ATS bus driver, Paul Rongey, raped her.  Kachadorian sought damages from SWIC under a theory of vicarious liability for Rongey's actions (Doc. 1, ¶¶ 9-12).

Plaintiff provided a defense to SWIC in the Kachadorian Lawsuit (Doc. 1, ¶ 16).  On or about June 20, 2020, Plaintiff advised Defendant that a mediation was scheduled, and demanded that Defendant participate in the mediation and share in the defense of SWIC in connection with the lawsuit (Doc. 1, ¶¶ 17-18).  On or about July 22, 2020, a global settlement was reached in the Kachadorian Lawsuit, with Plaintiff paying $750,000 on behalf of SWIC (Doc. 1, ¶¶ 19-20).  On July 23, 2020, Plaintiff advised Defendant of the

settlement and demanded that Defendant reimburse Plaintiff for its proportionate share of the settlement payment and defense costs incurred (Doc. 1, ¶ 24).  On July 24, 2020, Defendant issued a declination of coverage asserting that: (i) Plaintiff's policy and Defendant's policy were not intended to provide overlapping coverage; (ii) Plaintiff's policy was issued "specifically to insure the Southwestern Illinois College Alternative Transportation Systems/SWIC exposure"; and (iii) Defendant's policy "was not indented to cover the community transportation services out of which this loss arises." (Doc. 1, ¶ 22).

Plaintiff alleges that the allegations against SWIC in the Kachadorian Lawsuit implicated coverage under Defendant's policy, and specifically the Sexual Misconduct Declaratory Endorsement of Defendant's policy (Doc. 1, ¶ 24).  Plaintiff further alleges that Defendant's policy does not include any exclusions or endorsements which specifically apply to limit or exclude coverage for certain operations of SWIC, including its community transportation services (Doc. 1, ¶ 36).  Therefore, Plaintiff argues that Defendant was under an obligation to contribute and participate in the defense and indemnity of SWIC in connection with the Kachadorian Lawsuit, but failed to do so (Doc. 1, ¶¶ 37-38).  Plaintiff did not attach a copy of Defendant's policy to its complaint, but alleges that the policy contains the following provisions triggering coverage:

> Defendant "will pay those sums that the insured becomes legally obligated to pay as damages because of 'sexual misconduct' to which this insurance applies" and Defendant has "the right and duty to defend the insured against any "suit" seeking those damages" (Doc. 1, ¶ 24).  The policy defines "sexual misconduct" to mean "sexual abuse or sexual molestation that actually or allegedly results in 'bodily injury'" (Doc. 1, ¶ 24).

Defendant's policy provides primary coverage except when "Paragraph b." applies (Doc. 1, ¶ 25). "Paragraph b." is modified by the "Excess Other Insurance Endorsement" of Defendant's policy, which provides that Defendant "will share, the remaining loss, if any with any other insurance that is not described in this endorsement and which was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part." (Doc. 1, ¶ 26).

## Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Claims filed within the federal courts are governed by Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For a claim to survive a Rule 12(b)(6) motion to dismiss, the claim must sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. A plaintiff must provide enough detail "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) (internal citations and markings omitted). For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in

favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).  At the Rule 12(b)(6) stage, a district court may also consider exhibits attached to the complaint. *Thompson v. Ill. Dept. of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

## Discussion

Defendant argues that Plaintiff's complaint should be dismissed under Rule 12(b)(6) for failure to state a claim.  Defendant contends that Plaintiff failed to label the legal theories or plead allegations that put Defendant on notice of the causes of action that Plaintiff is alleging (Doc. 17, p. 3).  Defendant interprets the complaint to allege claims for equitable subrogation and/or equitable contribution but argues that Plaintiff has failed to plead the required material elements of those claims. Specifically, Defendant argues that Plaintiff failed to plead whether Defendant is primarily liable to the insured so to sustain an equitable subrogation claim.  Defendant also argues that Plaintiff failed to allege any allegations concerning the reasonableness of the amount Plaintiff paid to the insured, which Defendant states is a prerequisite to establishing a claim for equitable contribution.

Subrogation and contribution claims are two distinct remedies.  *See Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill.2d 307, 324 (Ill. 2004) (citing favorably to *Schal Bovis, Inc. v. Casualty Ins. Co.*, 315 Ill.App.3d 353, 362 (1st Dist. 2000).[1]  Subrogation devices place "the *entire* burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged." *Id.* at 316 (emphasis in original).  Whereas contribution

---

[1] The parties agree that Illinois law applies here.

5

claims arise among coinsurers and permit "one insurer who has paid the entire loss, or greater than its share of the loss to be reimbursed from other insurers who are also liable for the same loss." *Id.*; *see also Employers Ins. Of Wausau v. James McHugh Const. Co.*, 144 F.3d 1097, 1107 (7th Cir. 1998) (Simply put, equitable contribution applies "where one insurer has paid a debt equally owed by other insurers.").

Defendant argues that Plaintiff failed to state a claim for equitable subrogation because it did not allege that Defendant is primarily liable to the insured here (or conversely, that Plaintiff was secondarily liable). Instead, Defendant maintains that Plaintiff only alleged that Defendant is a "primary co-insurer of SWIC." In its Response (Doc. 27), Plaintiff does not address Defendant's arguments concerning equitable subrogation but instead argues that the claims in the complaint are sufficient equitable contribution claims.

A plain reading of the complaint also confirms Plaintiff is not asserting an equitable subrogation claim. Throughout the complaint, Plaintiff refers to Defendant as a co-insurer of SWIC and maintains that Defendant is obligated to reimburse Plaintiff for its proportionate share of defense and settlement costs. Nowhere in the complaint does Plaintiff seek for Defendant to pay the entire costs of the defense and settlement. Nor does Plaintiff allege that Defendant is primarily liable for the entire loss resulting from the Kachadorian Lawsuit. Therefore, the complaint does not support a claim for equitable subrogation; but the complaint does support claims for equitable contribution. *See Home Ins. Co.*, 213 Ill.2d 307 at 316 (contribution claims arise among co-insurers and are not applicable to primary insurer issues). Thus, to the extent Defendant argues the

6

complaint fails to state a claim for equitable subrogation, Defendant is correct, but such argument is superfluous and does not support dismissal.

Defendant also argues that Plaintiff failed to plead the necessary elements for an equitable contribution claim. As mentioned above, in Illinois, "[c]ontribution as it pertains to insurance law is an equitable principle arising among coinsurers which permits one insurer who has paid the entire loss, or greater than its share of the loss, to be reimbursed from other insurers who are also liable for the same loss." *Starr Indem. & Liab. Co. v. Tech. Ins. Co.*, 462 F.Supp.3d 877, 883 (N.D. Ill. 2020) (citing *Home Ins. Co.*, 315 Ill.App.3d at 316). The parties agree that the elements of an equitable contribution claim are three-fold, in that Plaintiff "must prove: (1) all facts necessary to the claimant's recovery against the insured; (2) the reasonableness of the amount paid to the insured; and (3) an identity between the policies as to parties and insurable interests and risks." *Schal Bovis, Inc. v. Casualty Ins. Co.*, 315 Ill.App.3d 353, 362 (1st Dist. 2000); *Starr Indem*, 462 F.Supp.3d at 883.

Here, the parties dispute the second element – the reasonableness of the amount paid. Defendant argues that Plaintiff has failed to allege any facts, or inferences, that support an allegation of reasonableness. Plaintiff, however, contends that Defendant has waived its rights to contest the reasonableness of the settlement by not participating in the settlement. The Court need not determine the question of waiver at this stage. Instead, the Court evaluates whether the complaint provides enough detail "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *E.E.O.C.*,

496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 555) (internal citations and markings omitted).

Plaintiff did not use the word "reasonable" in its complaint. Nevertheless, accepting all well-pleaded facts as true and drawing all possible inferences in favor of Plaintiff, the complaint survives dismissal. At their core, contribution claims require concurrent insurance policies to "insure the same entities, the same interests, and the same risks." *Home Ins. Co.*, 213 Ill.2d 307 at 316. Here, Plaintiff alleged that its policy and Defendant's policy provided concurrent coverage to SWIC for the specific claims at issue in the Kachadorian lawsuit. Plaintiff further alleged that it paid the entire loss for which Defendant was equally liable. At least one district court in this Circuit has suggested that such allegations are sufficient to sustain an equitable contribution claim under Fed. R. Civ. P. 12(b)(6). *See Hartford Cas. Ins. Co. v. Construction Builders in Motion, Inc.*, 2012 WL 5342312, at *4 (N.D. Ill. Oct. 29, 2012) (citing *Royal Glob Ins. Co. v. Aetna Ins. Co.*, 82 Ill.App.3d 1003, 1006;) (1st Dist. 1980)). Likewise, Plaintiff's allegations are sufficient here.

The fact that Plaintiff will ultimately need to prove that the amount it paid in the Kachadorian lawsuit was reasonable, is not inconsistent with the allegations in the complaint. Instead, the facts alleged in the complaint, if assumed to be true, are sufficient to plausibly give rise to claims for contribution from Defendant. Specifically, Plaintiff's pleadings are sufficient to allow this Court to draw the reasonable inference that Plaintiff could prove all facts necessary to establish SWIC's right to recover against Defendant, the reasonableness of the amount Plaintiff paid to SWIC on its behalf, and an identity

8

between Plaintiff and Defendant's policies with respect to their insurable interests and risks. Accordingly, Defendant's motion to dismiss is **DENIED**.

Finally, Defendant's arguments concerning a more definite statement are also unpersuasive. A plain reading of the complaint, construed in Plaintiff's favor, confirms that the complaint presents claims for equitable contribution and declaratory judgment. While more precise or artful language may be desired, it is not required here because the complaint fairly apprises Defendant of Plaintiff's claims against it. "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'" *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).

While Fed. R. Civ. P. 12(e) permits a party to move for a more definite statement, the motion "must point out the defects complaint of and the details desired." Fed. R. Civ. P. 12(e); *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 849 (7th Cir. 2017). Defendant argues that it is entitled to a more definite statement because "it is unclear what legal theories or causes of action that Plaintiff is alleging" (Doc. 17, at p. 6). However, Plaintiff is not required to plead specific legal theories. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014); *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 849 (7th Cir. 2017) (Plaintiffs are required "to plead *claims* rather than facts corresponding to the elements of a legal theory") (emphasis in original). Defendant's request for a more definite statement is therefore **DENIED**.

9

## Conclusion

For the above stated reasons, Defendant's Motion to Dismiss (Doc. 16) is **DENIED**. Further, the parties' joint Motion to Stay Discovery (Doc. 36) pending the resolution of the motion to dismiss is **DENIED, as moot**.

**SO ORDERED.**

Dated: December 2, 2021

_____
DAVID W. DUGAN
United States District Judge